UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> RODNEY VINCENT ORTIZ, and VINCENT RUDY ORTIZ <br><br> Defendant. | Case No. 15-cr-00594-RS-1 <br><br> **ORDER DENYING RODNEY ORTIZ'S MOTION FOR A BILL OF PARTICULARS AND GRANTING DEFENDANTS' MOTION TO DISMISS COUNTS 4 AND 5** |

### I.   INTRODUCTION

Defendant Rodney Ortiz contends that the acts at issue in this case—the alleged murder of Daniel Colegrove and the attempted murder of Francis Colegrove and Roger Surber—are state crimes improperly dressed-up in a federal indictment.[1]  A grand jury has indicted Rodney and his son, Vincent Ortiz,[2] for a variety of offenses flowing from the incident, including one count of conspiracy to possess with intent to distribute marijuana and two counts of obstruction of justice. Rodney and Vincent have pleaded not guilty to all counts, and discovery has commenced.

---

[1] Although the alleged victims are members of the Hoopa tribe and residents of the Hoopa reservation, Congress has ceded its jurisdiction to prosecute crimes occurring on Native American lands in California.  *See* 18 U.S.C. § 1162(a) (listing California as one of the states that "shall have jurisdiction over offenses committed by or against Indians in the areas of Indian country . . . to the same extent that such State . . . has jurisdiction over offenses committed elsewhere within the State . . ., and the criminal laws of such State . . . shall have the same force and effect within such Indian country as they have elsewhere in the State").

[2] To avoid confusion, this order refers to the defendants by their first names.

Despite the many pages and boxes of discovery, Rodney insists the government has not provided adequate notice of the government's theory of his participation in the alleged conspiracy. To remedy that problem, he seeks a bill of particulars with respect the drug-conspiracy charge. Although the discovery and indictment reveal little about the alleged drug conspiracy, Rodney is not at such a severe disadvantage to warrant granting his motion for a bill of particulars.  Instead, the essence of his argument is that the evidence is insufficient to support a conviction—a contention to be tested at trial.

Rodney and Vincent further contend[3] the indictment fails to disclose, as it must, which *federal* proceeding he obstructed or how there was a reasonable likelihood his alleged crimes would be reported to *federal* law enforcement officers.  The absence of such essential facts in the indictment, they contend, renders it ineffective, and mandates dismissal of those counts. [4]  As Counts 4 and 5 are materially defective as defendants insist and because a bill of particulars is not an available avenue to "cure" such defects, defendants' motion to dismiss Counts 4 and 5 must be granted.

## II.    FACTS AND PROCEDURAL HISTORY

On March 21, 2015, Daniel Colegrove, Francis Colegrove, and Roger Surber were shot on the Hoopa Indian reservation in Hoopa, California.  Francis and Surber survived the incident; Daniel did not.  Witnesses have identified Rodney Ortiz as the shooter.

That same day, Humboldt County prosecutors charged Rodney and Vincent with murder, attempted murder, two counts of assault with a firearm, being a felon in possession of a firearm, and accessory after the fact.  Nearly nine months later, a federal grand jury issued as six-count

---

[3] Vincent filed a joinder in the motion to dismiss Counts 4 and 5.

[4] Rodney initially believed the government had mistakenly charged him with both murder to prevent attendance at an official proceeding, 18 U.S.C. § 1512(a)(1)(A), and communication about "a commission or possible commission of a federal offense" to a federal "law enforcement officer" or United States judge, *id.* § 1512(a)(1)(C).  The indictment identifies only section 1512(a)(1)(C).  Rodney therefore sought to strike as surplusage the portion of the two counts referring to "official proceedings."  In its responsive brief, however, the government made clear its intent to pursue both theories of liability, and therefore Rodney has withdrawn his motion to strike as surplusage.

United States District Court
Northern District of California

1  indictment, charging Rodney and Vincent with the following offenses:  (1) Conspiracy to Possess

2  and Distribute with Intent to Distribute Marijuana, in violation of 21 U.S.C. § 846 (Count 1); (2)

3  Use/Possession of a Firearm During a Drug Trafficking Crime, in violation of 18 U.S.C § 924(c)

4  (Count 2); (3) Use/Possession of Firearm During a Drug Trafficking Crime Causing Murder, in

5  violation of *id.* § 924(j) (Count 3); (4) Conspiracy to Obstruct Justice, in violation of *id.* § 1512(k)

6  (Count 4); (5) Obstruction of Justice, in violation of *id.* § 1512(a)(1)(C) (Count 5); and (6)

7  Use/Possession of a Firearm During and in Relation to a Crime of Violence, in violation of *id.* §

8  924(c) (Count 6).  Vincent and Rodney maintain they are not guilty of the offenses charged.

9         To date, the government has provided Rodney with voluminous discovery:  thirty-one CDs

10  containing audio and video recordings, photos, redacted police reports, toxicology reports, the

11  defendants' statements, forensic reports, etc.  The government claims the only materials, which

12  have not been disclosed, do not yet need to be surrendered to Rodney under the Jenks Act.

13         Rodney's counsel represents that she has combed through the discovery materials and

14  unearthed extremely limited evidence of a conspiracy or obstruction and described those facts in

15  support of this motion for a bill of particulars and to strike Counts 4 and 5 as described below.  For

16  its part, the government has not challenged counsel's summary of the evidence.

17         Between March 13 and 15, 2015, Vincent Ortiz, Rodney's son, exchanged text messages

18  with a person known as "Critter" about a sale of Vincent's truck.  On March 13, Critter made the

19  following offer for the truck:  "[W]e could only come up with $800 cash . . . sorry its' the best we

20  can do, but the smoke all good. . . . so is 8 and the lb. good? Falk Decl. ¶ 6.  Vincent initially

21  refused the offer; however, the next day, Vincent contacted Critter again.  Rodney does not have

22  any information about the substance of that communication.  *Id.*

23         On March 18, Vincent sent Critter another text message:  "the green was short 4 oz . . . I

24  need to get a hold of 4 oz so I don't get a bad rep."  *Id.*  Critter responded, "no way I watch him

25  way it.  No way.  It was not short if it is bring that and the money back and you can have truck but

26  there is no way Im giving you 4 oz that was a pound."  *Id.*  Not one of these text messages

27  mentions Rodney.  On March 18, Vincent sent a text message to Daniel Colegrove's daughter,

28

1   Dawn Colegrove, asking that she "shoot [him] a half 4 the pound your pops got," and said, "im

2   gonn give him cash 4 it back." *Id.* ¶ 9.

3       The government has not disclosed any text messages to or from Rodney about the pound of

4   marijuana.  Nor has the government disclosed whether law enforcement officers recovered

5   marijuana from any alleged victim or defendant. *Id.* ¶ 7.  Rodney's name appears only in police

6   reports.  According to one report, witnesses Ethel Reed and Roger Surber claim Rodney and

7   Daniel Ortiz were arguing about "weed" at the time of the shooting. *Id.* ¶ 8.  Colegrove yelled at

8   Rodney about the fact that Vincent was "short" on a pound of weed. *Id.*  In a different police

9   report, Surber stated, "[Daniel Colegrove] started bad mouthing Vincent around town to other

10  people saying 'he was going to do this to him, or do that to him, if he didn't pay." *Id.* ¶ 10.

11  Surber also told police that Rodney and Daniel Colegrove were in the trailer "arguing over the

12  shortage of marijuana" and "how Colegrove always paid his debts." *Id.* ¶ 11.  According to the

13  report, Rodney told Daniel his "bad son" didn't weigh the marijuana, and the two would need to

14  settle the argument the "convict way." *Id.*

15      In support of the two obstruction charges, the government has identified only one

16  document to support its theory of Rodney's culpability:  Surber's statement to the state police

17  about Rodney's actions after the shooting.  Allegedly, Rodney attempted to flee the trailer after

18  Daniel and Francis Colegrove had been shot.  Vincent pushed Rodney back into the trailer and

19  said, "No Dad, you have to do them all, you have to do them all." *Id.* ¶ 12.

20              III.    **LEGAL STANDARD**

21      The core purpose of an indictment is to provide notice of the charges against the defendant.

22  Notice must be clear and must, at the very least, "'fairly inform[] a defendant of the charge against

23  which he must defend'" such that he may plead, prepare a defense, ensure he is prosecuted on the

24  basis of facts presented to the grand jury, protect against future prosecution, and inform the court

25  of the facts alleged to evaluate the sufficiency of the evidence. *United States v. Resendiz-Ponce*,

26  549 U.S. 102, 108 (2007) (citing *Hamling v. United States*, 418 U.S. 102, 117 (1974)); *see also*

27  *United States v. Cecil*, 608 F.2d 1294, 1296 (9th Cir. 1979) (citing *Russell v. United States*, 369

United States District Court
Northern District of California

U.S. 749, 763, 768 n.15 (1962)).

If an indictment lacks the requisite information to provide adequate notice of the charges against the defendant, district courts may order the government to submit a bill of particulars. Fed. R. Crim. P. 7(f).  The decision to grant or deny a bill of particulars rests within the trial court's discretion, and is appropriate when an indictment is ambiguous such that "a defendant requires clarification in order to prepare a defense."  *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983).  "[A bill of particulars] is designed to apprise the defendant of the specific charges being presented to minimize danger of surprise at trial, to aid in preparation and to protect against double jeopardy."  *Id.*  In other words, the purpose of a bill of particulars is to clarify ambiguities in an indictment, not to serve as a replacement for discovery requests.  *Id.*; *see also*, *United States v. Ryland*, 806 F.2d 941, 942 (9th Cir. 1986) ("A defendant is not entitled to know all the *evidence* the government intends to produce but only the *theory* of the government's case."  (emphasis in orginal)); *United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir. 1979) ("[F]ull discovery . . . obviates the need for a bill of particulars.").

Defendants may challenge the sufficiency of the pleadings by filing a motion to dismiss for failure to state a federal offense.  *See* Fed. R. Crim. P. 12(b)(3)(B)(v).  When considering such a motion, district courts are "bound by the four corners of the indictment" and must presume the averments to be true.  *United States v. Lyle*, 742 F.3d 434, 436 (9th Cir. 2014) (internal quotation marks omitted).  Technical deficiencies in an indictment will not result in dismissal, however, an adequate indictment must still offer the procedural protections "a grand jury indictment was intended to confer[.]"  *Russell*, 369 U.S. at 763.  "The complete failure to charge an essential element of a crime, however, is by no means a mere technicality."  *United States v. Du Bo*, 186 F.3d 1177, 1180 (9th Cir. 1999) (citing *United States v. Carll*, 105 U.S. 611, 613 (1881) (holding the omission of a necessary element of an offense is a "matter of substance, and not a defect or imperfection in matter of form only")).  An indictment therefore must be dismissed if it "fails to ensure that [the defendant] was prosecuted only on the basis of facts presented to the grand jury."  *Id.* at 1179 (internal quotation marks and alteration omitted).  "[A] bill of particulars cannot save

United States District Court
Northern District of California

United States District Court
Northern District of California

an invalid indictment" because to do so would "allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment." *Russell*, 369 U.S. at 770.

## IV.    DISCUSSION

### A. Bill of Particulars as to Count 1 (Conspiracy to Possess with Intent to Distribute Marijuana)

Rodney contends neither the indictment nor information produced during discovery enable him to defend against the charge that he conspired with Vincent to distribute and to possess with the intent to distribute marijuana.  Count 1 of the indictment alleges:

> From March 13, 2015 through March 21, 2015, in the Northern District of California, the defendants, RODNEY VINCENT ORTIZ AND VINCENT RUDY ORTIZ, and others known and unknown to the Grand Jury, knowingly and intentionally conspired to distribute and to possess with intent to distribute a Schedule I controlled substance, namely, marijuana, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D).  All in violation of Title 21, United States Code Sections 846 and 841(a)(1) and (b)(1)(D).

Rodney argues the indictment suffers from very specific deficiencies:  insufficient information about (1) the agreement he and Vincent allegedly made, and (2) the overt acts he supposedly took in furtherance of the agreement.[5]  In short, he seeks to understand better the government's theory of his participation in the alleged conspiracy.

"Conspiracy is an agreement to commit a crime, and the intent to commit the underlying offense." *United States v. Loveland*, -- F.3d --, No. 13-30162, 2016 WL 3156308, at *2 (9th Cir. June 3, 2016) (citing *United States v. Herrera-Gonzalez*, 263 F.3d 1092, 1095 (9th Cir. 2001); 21 U.S.C. § 846).  "Although an agreement may be inferred from the defendant's acts or from other circumstantial evidence, simple knowledge, approval of, or acquiescence in the object or purpose of a conspiracy without an intention and agreement to accomplish a specific illegal objective, is not sufficient." *United States v. Lennick*, 18 F.3d 814, 818 (9th Cir. 1994).

---

[5] For his part, Rodney acknowledges the government need not prove he took any overt acts in furtherance of a drug conspiracy.

1    To support his request, Rodney relies upon *United States v. Cecil*, 608 F.2d 1294, 1297

2    (9th Cir. 1979), where the Ninth Circuit reversed a conviction for conspiracy to distribute and to

3    possess with intent to distribute marijuana because the indictment was insufficient.  The

4    indictment identified the date range of the alleged conspiracy ("beginning on or before July, 1975,

5    and continuing thereafter until on or after October, 1975") and the alleged co-conspirators.  *Id.* at

6    1295.  Yet, the indictment was insufficient because it "fail[ed] to state any other facts or

7    circumstances pertaining to the conspiracy or any overt acts done in furtherance thereof," and,

8    "[m]ore importantly, . . . fail[ed] to place the conspiracies within any time frame."  *Id.* at 1297.

9    Absent these critical facts, the court concluded the indictment "fail[ed] to allege sufficient facts to

10   facilitate the proper preparation of a defense and to ensure that the defendants were prosecuted on

11   facts presented to the Grand Jury."  *Id.*

12   Although the language of Count 1 is similar to that of the indictment in *Cecil*, there are two

13   critical difference between the two indictments.  First, in the instant indictment the date range is

14   not "open-ended in both directions."  *Id.*  Second, the evidence produced so far, while limited,

15   supplies Rodney with enough information to understand the government's theory of the case.

16   While the indictment is rather bare-bones, it provides the name of Rodney's alleged co-conspirator

17   (Vincent), a week-long date range of the alleged conspiracy (March 13, 2015 through March 21,

18   2015), and the object of the conspiracy (to possess marijuana with intent to distribute it).  Thus,

19   the government has provided more information than is usually required.  *See United States v.*

20   *Dicesare*, 765 F.2d 890 (9th Cir. 1985) (the district court did not abuse its discretion by denying a

21   motion for a bill of particulars "(1) to obtain the names of any unknown coconspirators; (2) to

22   determine the exact date on which the conspiracy allegedly began; and (3) to delineate all other

23   overt acts that comprised the charged activity."  *United States v. DiCesare*, 765 F.2d 890, 897 (9th

24   Cir. 1985).  Moreover, as "the Government need not prove the commission of any overt acts in

25   furtherance of the conspiracy" to convict Rodney of violating 21 U.S.C. §846, it need not include

26   overt acts in the indictment.  *United States v. Shabani*, 513 U.S. 10, 15 (1994).  Thus, the

27   government is not obliged to identify overt acts taken in furtherance of a drug conspiracy.

28

United States District Court
Northern District of California

1    Nor must the government explicitly state there was an agreement to distribute drugs in

2 addition to the averment that Rodney and Vincent conspired to do so.  The existence of an

3 agreement is baked into the definition of conspiracy:  the government must always prove (1) an

4 agreement, and (2) the intent to commit the underlying offense.  *Loveland*, 2016 WL 3156308, at

5 *2.  Thus, the word "conspiracy" as used in common parlance connotes both elements.  *See*

6 *Resendiz-Ponce*, 549 U.S. at 107 ("[T]he word 'attempt' as used in common parlance connote[s]

7 action rather than mere intent, but more importantly, as used in the law for centuries, it

8 encompasses both the overt act and intent elements.").  Here, the use of the word "conspiracy,"

9 and the identification of the date, place, and object of the conspiracy satisfy the two constitutional

10 requirements of an indictment in this context.  *See id.* at 108 ("In this case, the use of the word

11 'attempt,' coupled with the specification of the time and place of respondent's attempted illegal

12 reentry, satisfied both [constitutional requirements for an indictment].").  At the end of the day,

13 Rodney's request for a bill of particulars boils down to a claim of evidence insufficiency.  Such

14 arguments are for trial.  Accordingly, Rodney's motion for a bill of particulars must be denied.

15    **B.  Motion to Dismiss Counts 4 and 5**

16    Rodney and Vincent contend the averments in Counts 4 and 5 are fatally deficient because

17 they do not offer a basis for the *federal* government to prosecute him for *federal* crimes.  The

18 government opted to charge the Ortizes with obstruction under two theories—that they

19 participated in a killing (1) to prevent testimony at a federal "official proceeding," and/or (2) to

20 prevent communication to a federal law enforcement officer.[6]  The indictment does not identify

21

22 [6] Count 4 of the indictment charges:

23 On March 21, 2015, in the Northern District of California, the defendants RODNEY VINCENT
ORTIZ and VINCENT RUDY ORTIZ willfully and intentionally conspired and agreed together
24 and with each other to kill another person with the intent to prevent the attendance and testimony
of any person in an official proceeding and to prevent the communication by any person to a law
25 enforcement officer and judge of the United States of information relating to the commission and
possible commission of a Federal offense, in violation of 18 U.S.C. § 1512(a)(1)(C).  All in
26 violation of Title 18 United States Code, Section 1512(k).

27 Count 5 charges:

28

the impacted federal "official proceeding." Nor does it claim the communication about the offense was reasonably likely to reach a *federal* law enforcement officer. The Ortizes argue these omissions render the indictment ineffective as far as notice of the charges, benefit of the grand-jury right, and protection against subsequent prosecution on the same charges. The government believes the indictment need only track the statutory language, and identify the who, what, when, and where of the offenses. Although the indictment does not identify which official proceeding was allegedly obstructed, the government now asserts the proceeding affected was "a federal grand jury proceeding and a district court case"—presumably this criminal case.

### 1. Obstruction of "Official Proceedings"

Section 1512(a)(1)(A) prohibits "kill[ing] or attempt[ing] to kill another person, with intent to . . . prevent the attendance or testimony of any person in an official proceeding." [7] Congress has defined an "official proceeding" in pertinent part as follows:

> (A) a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;
> (B) a proceeding before the Congress;
> (C) a proceeding before a Federal Government agency which is authorized by law . . . .

18 U.S.C. § 1515 (a)(1)(A)-(C). A person is guilty of obstruction if the official proceeding is pending, about to be instituted at the time of the obstructive act, or reasonably foreseeable. 18 U.S.C. § 1512(f)(1); *Arthur Andersen LLP v. United States*, 544 U.S. 696, 707-08 (2005) ("It is . .

---

On March 21, 2015, in the Northern District of California, the defendants RODNEY VINCENT ORTIZ and VINCENT RUDY ORTIZ, each aided and abetted by the other, knowingly and intentionally attempted to kill another person, namely Victim 3, with the intent to prevent the attendance and testimony of any person in an official proceeding and to prevent the communication by any person to a law enforcement officer and judge of the United States of information relating to the commission and possible commission of a Federal offense, in violation of 18 U.S.C. § 1512(a)(1)(C) and 2.

[7] Subsection (k) criminalizes forming a conspiracy to commit any offense described in section 1515. *See id.* § 1512(k).

United States District Court
Northern District of California

1  . one thing to say that a proceeding 'need not be pending or about to be instituted at the time of the

2  offense,' and quite another to say a proceeding need not even be foreseen." (quoting 18 U.S.C. §

3  1512(e)(1))). "[A] criminal investigation is not an "official proceeding" under the obstruction of

4  justice statute." *United States v. Ermoian*, 752 F.3d 1165, 1172 (9th Cir. 2013).

5       Although indictments are typically sufficient when they "track[] the words of the statute,"

6  *United States v. Davis*, 336 F.3d 920, 922 (9th Cir. 2003) (internal quotation marks omitted),

7  courts must evaluate their sufficiency with an eye to the broader purpose of an indictment: (1) to

8  "inform[] the defendant of the charge against which he must defend"; and (2) to "enable[] him to

9  plead an acquittal or conviction in bar of future prosecutions for the same offense," *United States*

10  *v. Bailey*, 444 U.S. 394, 414 (1980). Even when an indictment includes every element of the

11  crime charged, it may be deficient if crucial facts are missing. *See Russell*, 369 U.S. at 770

12  ("Where guilt depends so crucially upon such a specific identification of fact, our cases have

13  uniformly held that an indictment must do more than simply repeat the language of a criminal

14  statute.").

15       Some discussion of the facts underlying *Russell* is critical to understand when an

16  indictment must provide additional facts even if the language of the count tracks that of the statute.

17  In *Russell*, the government pursued charges against the defendant for failing to answer questions

18  "pertinent to a question under inquiry" by a congressional entity. *See id.* at 751-52. The

19  indictment did not identify "the subject under congressional subcommittee inquiry at the time the

20  witness was interrogated." *Id.* at 752. After trial and appeal, the Supreme Court vacated the

21  convictions because the indictment failed to include essential information: "the subject which was

22  under investigation at the time of the defendant's alleged default or refusal to answer." *Id.* at 754.

23  A determination about the pertinency of the inquiry was of "crucial importance" because the

24  refusal to answer a question was lawful unless the question was "pertinent to the matter under

25  inquiry." *Id.* at 755 (internal quotation marks omitted); *see also id.* at 758 ("The crucial

26  importance of determining the issue of pertinency is reflected in many cases . . . ."). The vice of

27  the indictments, the Court held, was that they failed sufficiently to apprise "the defendant of what

28      ORDER DENYING MOTION FOR A BILL OF PARTICULARS AND GRANTING MOTION TO DISMISS COUNTS 4 & 5
    CASE NO. 15-cr-00594-RS-1

he must be prepared to meet" because "guilt depend[ed] so crucially upon such a specific identification of fact." *Id.* at 764.  Such a "cryptic" indictment "requires the defendant to go to trial with the chief issue undefined" and "gives the prosecution free hand on appeal to fill in the gaps of proof by surmise or conjecture." *Id.* at 766.  In addition, such enigmatic indictments enable prosecutors and the courts "to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment," thereby depriving the defendant of the procedural benefits of the grand jury.  *Id.* at 770.

Here, Counts 4 and 5 do not identify the official proceeding Rodney and Vincent allegedly conspired or acted to obstruct.  The Ortizes therefore argue these omissions render Counts 4 and 5 incurably defective because, as in *Russell*, the indictment fails to include facts of "crucial importance."

At least two courts have so found.  In *United States v. Murphy*, 762 F.2d 1151, 1154-55 (1st Cir. 1985), the First Circuit reversed a conviction because the indictment failed to identify the official proceeding the defendants allegedly obstructed.  The indictment "parrot[ed] the statute," gave 'the date of the alleged offense,' and asserted the defendants threatened "Richard Watson, a witness in an official proceeding." *Id.* at 1153 (internal quotation marks omitted).  It "did not identify *any* proceeding in which defendants were allegedly attempting to influence Watson's testimony." *Id.* at 1154.  The court concluded the defendants could not adequately prepare their defense without any indication of which official proceeding they allegedly tried to influence, and therefore the indictment must be dismissed despite full discovery and a trial.  *See id.* ("[I]t has long been settled law that an invalid indictment cannot be cured by a Bill of Particulars."  (citing *Russell*, 369 U.S. at 770)).

Similarly, in *United States v. Peterson*, 544 F. Supp. 2d 1363, 1376–77 (M.D. Ga. 2008), a district court dismissed an obstruction count from the indictment because the government failed to indicate which federal proceeding the defendant was charged with obstructing.  The *Peterson* court worried the open-ended indictment would permit the government to "secure a conviction based on the official proceeding that it thinks Defendant obstructed, rather than on the official

ORDER DENYING MOTION FOR A BILL OF PARTICULARS AND GRANTING MOTION TO DISMISS COUNTS 4 & 5
CASE NO. 15-cr-00594-RS-1

11

United States District Court
Northern District of California

1  proceeding upon which the grand jury based its indictment," and therefore violated the Fifth

2  Amendment. *Id.* at 1377.

3          Like the indictments at issue in *Murphy* and *Peterson*, the indictment here does not pass

4  constitutional muster. Nothing in the indictment constrains the government from arguing Rodney

5  intended to obstruct an investigation into his alleged conspiracy to distribute marijuana, the

6  murder of Daniel Colegrove, or some other federal offense committed by some other person. Nor

7  does the indictment provide any information about which official federal proceeding the grand

8  jury had in mind when it returned the True Bill. The indictment thus offers little guidance about

9  how to defend against the charge or any assurance the Ortizes could use the indictment to stave off

10 future prosecutions in the event of acquittal. Accordingly, the Ortizes' motion to dismiss those

11 counts must be granted. *See Russell*, 369 U.S. at 770; *Murphy*, 762 F.2d at 1155; *Petersen*, 544 F.

12 Supp. 2d at 1377.

13              *2.  Obstruction of a Federal Investigation*

14         Section 1512(a)(1)(C) prohibits killing or attempting to kill a person with the intent to

15 prevent any person from communicating to a *federal* law enforcement officer or judge

16 "information relating to the commission or possible commission of a Federal offense or a violation

17 of conditions of probation, parole, or release pending judicial proceedings . . . ." Thus, "in a

18 prosecution the Government must prove (1) a killing or attempted killing, (2) committed with a

19 particular intent, namely, an intent (a) to 'prevent' a 'communication' (b) about 'the commission

20 or possible commission of a Federal offense' (c) to a federal 'law enforcement officer or judge.'"

21 *Fowler v. United States*, 563 U.S. 668, 672 (2011). The government need not prove the defendant

22 knew the judge or law enforcement officer was a federal employee. 18 U.S.C. §1512(g).

23         A killer does not commit a *federal* offense, however, if he takes a life to prevent a

24 communication about a federal offense or possible federal offense "to law enforcement officers in

25 general rather than to some specific law enforcement officer or set of officers which the defendant

26 has in mind." *Id.* (emphasis omitted); *see also id.* at 674 ("[T]he Government must show more

27 than . . . the intent to prevent communications to law enforcement officers in general."). The

28              ORDER DENYING MOTION FOR A BILL OF PARTICULARS AND GRANTING MOTION TO DISMISS COUNTS 4 & 5
                                                      CASE NO.  15-cr-00594-RS-1

Supreme Court offered two reasons for this conclusion. First, the phrase "intent to prevent" suggests prevention is possible. *See id.* at 674-75 ("[O]ne cannot act with an 'intent to *prevent*' something that could not possibly have taken place regardless." (emphasis in original)). Second, allowing proof of only "the broad indefinite intent . . . would bring within the scope of this statute many instances of witness tampering in purely state investigations and proceedings, thus extending the scope of this federal statute well beyond the primarily federal area that Congress had in mind." *Id.* at 675. Instead, the government "must show *a reasonable likelihood* that, had, *e.g.*, the victim communicated with law enforcement officers, at least one relevant communication would have been made to a federal law enforcement officer." *Id.* at 677. The "likelihood of communication to a federal officer" must have been "more than remote, outlandish, or simply hypothetical." *Id.* at 678.

The question, then, is whether the likelihood of communication to a federal officer is an essential ingredient of the obstruction offense that must appear in the indictment. The Ortizes maintain it is because federal jurisdiction would not exist but for the involvement of federal law enforcement officers. The government insists *Fowler* established the quantum of proof required to convict a person for violating 18 U.S.C. § 1512(a)(1)(C), but did not alter the requirements for an indictment.

The Supreme Court's holding stemmed from its interpretation of section 1512(a)(1)(C)'s text. *See Fowler*, 563 U.S. at 672 ("The question here is how [the statute's] language applies when a defendant (1) kills a victim, (2) with an intent (a) to prevent a communication (b) about the commission or possible commission of a federal offense but (c) *to law enforcement officers in general . . . .*"). Thus, the government is correct in one respect—the Supreme Court did not create a new element of the federal obstruction statute. *United States v. Hamilton*, No. 1:15-CR-0240-TCB, 2016 WL 1696136, at *4 (N.D. Ga. Apr. 28, 2016) ("*Fowler* did not introduce any new elements for a conviction under § 1512. Instead, the Supreme Court merely interpreted the already-present element of intent . . . ."). *But see Fowler*, 563 U.S. at 685 (Alito, J., dissenting) ("[T]he Court has effectively amended the statute by adding a new element.").

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

Nevertheless, the reasonable likelihood that there would be communication to federal law enforcement is an essential fact that must be in an indictment.  First, such information is critical to establish federal jurisdiction.  *See id.* at 677 ("[B]ecause of the frequent overlap between state and federal crimes, the use of a standard based on the word 'possible' would transform a federally oriented statute into a statute that would deal with crimes, investigations, and witness tampering, that as a practical matter, are purely state in nature.").  Second, as pleaded, the indictment does not guarantee the grand jury considered whether there was a reasonable likelihood of communication with federal law enforcement in the absence of such an averment in the indictment.

Moreover, Counts 4 and 5 are constitutionally infirm for two additional reasons.  They do not identify the federal law enforcement officer(s), judge(s), or even agency of law enforcement the communications might have reached.  Nor do they specify which federal offense(s) or possible federal offense(s) communication would have been about.  Absent that information, the Ortizes cannot assess whether communication to those officers was reasonably likely or mount a defense.

The omissions the Ortizes have identified are not trivial; the absence of such information handicaps the Ortizes' ability to conduct investigation, to propound discovery requests, and to evaluate the strength of the evidence against them and whether it is sufficient to sustain a conviction.[8]  Because neither a bill of particulars, nor discovery, can cure these deficiencies, Counts 4 and 5 must be dismissed.  *See Russell*, 369 U.S. at 770 ("[A] bill of particulars cannot save an invalid indictment. . . . [A]n indictment may not be amended except by resubmission to the grand jury . . . .); *see also See Murphy*, 762 F.2d at 1155; *Petersen*, 544 F. Supp. 2d at 1377.

---

[8] The circuit courts have started articulating various formulations to help district courts evaluate the sufficiency of the evidence.  *See United States v. Veliz*, 800 F.3d 63, 75 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 522 (2015) (affirming a conviction where the offenses were not "purely state in nature" because the defendant committed multiple crimes across multiple state lines); *United States v. Tyler*, 732 F.3d 241, 252 (3d Cir. 2013) ("To establish this reasonable likelihood, there must be evidence—not merely argument of the witness's cooperation with law enforcement . . . ." (internal quotation marks omitted); *United States v. Ramos-Cruz*, 667 F.3d 487, 497 (4th Cir. 2012) ("[T]he federal nexus element of § 1512(a)(1)(C) may be inferred by the jury from the fact that the offense was federal in nature, plus additional appropriate evidence." (internal quotation marks omitted)).  The Ninth Circuit has not yet opined on the issue.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

V.   **CONCLUSION**

In sum, Rodney Ortiz's motion for a bill of particulars with respect to Count 1 must be denied.  Defendants' motion to dismiss indictment Counts 4 and 5 must be granted.

**IT IS SO ORDERED**.

Dated:  August 11, 2016

_____
RICHARD SEEBORG
United States District Judge

ORDER DENYING MOTION FOR A BILL OF PARTICULARS AND GRANTING MOTION TO DISMISS COUNTS 4 & 5
CASE NO. 15-cr-00594-RS-1